IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:15-cr-00023 |
| | ) | (Civil Action No. 7:19-cv-81378) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TERRELL BANKER, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Senior United States District Judge |

Terrell Banker, through counsel, has moved to vacate his federal conviction and sentence under 28 U.S.C. § 2255. For the following reasons, the motion will be denied.

## Summary of the Facts

The following summary of the facts is taken from the opinion by the United States Court of Appeals for the Fourth Circuit on Banker's direct appeal of his convictions:

> In early February 2015, Banker met C.O. through a mutual friend, Laura Cook, who had only recently met C.O. At that time, C.O. was seventeen years old. After all the events at issue in this case occurred, C.O. turned eighteen years of age on June 1, 2015.
>
> Although C.O. initially lied to Cook and said that she was eighteen, C.O. soon told her the truth that she was a minor. C.O. never directly told Banker her age.
>
> Around the time they met in person, Banker, Cook, and C.O. also became "friends" on Facebook, where C.O.'s account incorrectly represented that she was eighteen years old. Despite that representation, in a March 2015 Facebook update, which Banker would have been able to see, C.O. tagged Cook and another mutual friend and referenced her upcoming 18th birthday: "I can't wait for the summer. It's going to be a live [sic] AF . . . . Girls you gonna party with me on my birthday in June? It's the big one, ladies."
>
> Prior to the events leading to Banker's indictment, he, Cook, and C.O. spent most weekends together. Banker supplied illicit drugs to both women and, because C.O. did not have money to pay him, accepted payment in the form of sex from her.

Several days prior to the charged events, C.O. extended her weekend visit with Cook. Although Banker had agreed to take C.O. to her high school on Monday morning, C.O. ended up "d[oing] coke all [Sunday] night" and did not make it to school. Despite that decision, C.O. confided in Cook that she was scared about missing another day of school because she was already on probation. Cook invited C.O. to "stay with her until [C.O.] turned 18." Having decided to stay with Cook, C.O. told Banker that she was "not going home, [she was now] a runaway."

C.O. asked if Banker could sell her phone because she needed money and did not want anyone to be able to track her location via her phone. In addition, C.O. asked Banker to take her to her stepfather's house while he was at work so that she could take some things to pawn. Banker agreed, though they did not follow through with that plan. During the same time, C.O. and Cook discussed how C.O. could earn money. Cook suggested that C.O. become a prostitute and that Banker could help her do so.

After that conversation, Cook and Banker sat in Banker's truck in front of Cook's residence and talked for several hours. During that conversation, overheard by C.O., Cook asked Banker, "What are we going [to] do with her? She's 17. She's a runaway." Banker's expression did not noticeably change immediately thereafter and no verbal response from Banker is in the record.

A few days later, Banker arranged for C.O. to have sex with a local truck driver upon payment of a fee to Banker. He had periodically arranged for the truck driver to meet women in the past for such services, so Banker and the truck driver negotiated a price of $150 and agreed to meet at midnight on April 1 in the parking lot of an area hotel.

Banker and C.O. coordinated the rendezvous through a series of messages on Facebook. C.O. expressed hesitation because she had "never prostituted [her]self before" and she was concerned about the truck driver's appearance. Banker attempted to allay her doubts, encouraging her to just get it over with quickly, directing her to a photograph of the truck driver on Facebook, and reassuring her that the man was "cool" and that a mutual friend had previously had sex with him as well. He also reminded her that she needed money quickly. C.O. agreed to do as Banker proposed.

2

>   At the arranged time, Banker drove C.O. to the hotel parking lot. He then took $200 from the truck driver and left the scene in order to get change. While he was gone, C.O. and the truck driver had sex in the driver's truck.
>
>   In the meantime, a bystander telephoned the police to report suspicious activity in the hotel parking lot. The police officer dispatched to the hotel discovered C.O. and the truck driver waiting in the truck for Banker to return. C.O. initially provided false identifying information, but soon started cooperating with the police and relayed the recent course of events with Banker and Cook. Banker did not return to the hotel.
>
>   The police asked C.O. to contact Banker on Facebook. When she did, C.O. told Banker that she had been "held . . . as a runaway," but was finally back home. She told him "[t]hey didn't charge me because I'm a minor." Banker did not reply directly to C.O.'s statement that she was a minor.

United States v. Banker, 876 F.3d 530, 532–33 (4th Cir. 2017) (citations omitted).

## Procedural History

On April 16, 2015, a grand jury in the Western District of Virginia returned an indictment charging Banker with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a), and enticement of a minor, in violation of 18 U.S.C. § 2422(b). On May 21, 2015, the grand jury returned a superseding indictment against Banker and Cook. In addition to the offenses alleged in the original indictment, the superseding indictment charged Banker with conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c). All of the offenses were alleged to have occurred prior to June 1, 2015, the date that C.O. turned eighteen.

Banker was originally represented by the Federal Public Defender's Office. However, on July 28, 2015, the Federal Public Defender moved to withdraw as counsel due to a conflict that arose after Cook was added as a codefendant. The court granted the motion to withdraw and on

August 3, 2015, Mark Claytor was appointed to represent Banker. Claytor remained Banker's counsel through trial.

Prior to trial, the government filed a motion in limine concerning its burden of proof with respect to the knowledge element of each substantive offense. On October 1, 2015, the court ruled that, with respect to the § 1591(a) sex trafficking offense, the court would charge the jury that it needed to find beyond a reasonable doubt that Banker "knew, or was in reckless disregard of the fact that [C.O.] was under the age of eighteen." ECF No. 96 at 2. As for the § 2422(b) enticement offense, the court indicated that it would charge the jury that it needed to find that Banker "knowingly persuaded, induced, enticed, or coerced [C.O.] to engage in prostitution." Id. at 3. With respect to the element of age, the court ruled that the jury must find "that [C.O.] was less than eighteen years old at the time," but that the statute did not require the government to prove that Banker knew that C.O. was under the age of eighteen. Id.

At trial, several witnesses testified to the course of events described above, including C.O., Cook, and the truck driver. Banker did not call any witnesses or present any other evidence.

The court instructed the jury on the elements of the offenses in a manner consistent with its pretrial rulings. On October 8, 2015, the jury convicted Banker on all three counts.

Prior to sentencing, Banker retained Robert Dean to represent him. On January 6, 2016, the court granted Banker's motion to substitute counsel. On June 30, 2016, Banker was sentenced to a total term of imprisonment of 156 months.

On November 14, 2017, Banker's convictions were affirmed by the Fourth Circuit. See Banker, 876 F.3d at 534–41 (concluding that the court's jury instructions concerning §§ 1591(a)

and 2422(b) accurately stated the law and that there was sufficient evidence for the jury to find guilt beyond a reasonable doubt). His petition for writ of certiorari was denied by the Supreme Court on May 21, 2018.

Banker, through his retained counsel, now moves to vacate his convictions under 28 U.S.C. § 2255. The government has opposed the motion, and the matter is ripe for review.

## Discussion

### I. Applicable Legal Standards

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack his sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

In seeking relief under § 2255, Banker claims that trial counsel provided ineffective assistance. Such claims are reviewed under the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a petitioner must establish (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment, meaning that counsel's performance fell below "an objective standard of reasonableness," and (2) that the deficient performance prejudiced the defense, which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."

466 U.S. at 687–88, 694. A petitioner must meet both prongs of the test; neither deficient performance or prejudice alone will suffice. Id. at 697.

## II. Claims of Ineffective Assistance

Banker asserts four claims of ineffective assistance. Specifically, he faults trial counsel's failure to (1) call certain unidentified witnesses; (2) offer into evidence the victim's Facebook page: (3) offer into evidence a jail call between himself and a person he believes was Laura Cook; and (4) advise him of the right to testify. The court will address each claim in turn.

### A. Failure to call witnesses

Banker first contends that trial counsel was ineffective in failing to call witnesses to testify at trial. Banker alleges that "he provided trial counsel with several witnesses whom he wished to call in his defense to establish that Laura Cook regularly used his Facebook messenger account to communicate with people in their social circle, and that the phone itself was not registered to him." ECF No. 163 at 6. Banker does not identify these witnesses, however, or explain how their testimony might have changed the outcome of the trial. Accordingly, Banker has not shown that trial counsel acted in unreasonably in failing to call the witnesses or that the failure to do so prejudiced his defense. Thus, this claim does not satisfy either prong of the Strickland test and must be dismissed. See United States v. Dyess, 730 F.3d 354, 359, 365 (4th Cir. 2013) (emphasizing that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court," and finding no merit to a claim of ineffective assistance where the petitioner offered "nothing more than speculative conclusions in explaining who [defense] counsel failed to call and what aid their testimony would have provided to [the petitioner's] case").

### B. Failure to offer C.O.'s Facebook page into evidence

Banker next contends that trial counsel was ineffective in failing to offer into evidence C.O.'s Facebook page, which listed a false age. For the following reasons, the court concludes that this claim is also subject to dismissal.

Records from C.O.'s Facebook account were admitted into evidence as the government's Exhibit 10. See ECF Nos. 107 & 107-9. On direct examination, C.O was questioned extensively about her Facebook account. C.O. admitted that she falsely indicated on her Facebook profile that she was eighteen years old. See Trial Tr. 93, ECF No. 125. Among other reasons, C.O. testified that she did this because she "hung out with older people" and she wanted them to think that she "was of age," since "some people don't like hanging out with minors." Id. at 94.

In light of C.O.'s testimony regarding her Facebook account and her admission that it listed a false age, any further evidence on this point would have been cumulative. Consequently, Banker is unable to demonstrate that trial counsel's failure to offer the Facebook page into evidence was objectively unreasonable or prejudicial. See Valentino v. Clarke, 972 F.3d 560, 584 (4th Cir. 2020) (noting that "the failure to present cumulative evidence is generally not prejudicial"); Parker v. Allen, 565 F.3d 1258, 1279 (11th Cir. 2009) (emphasizing that "[a]dditional, but cumulative, evidence which could have been presented does not . . . establish ineffective assistance").

### C. Failure to offer a jail call into evidence

In his third claim, Banker alleges that trial counsel provided ineffective assistance by failing to offer a jail call into evidence. According to Banker, the phone call "appears to be

7

between him and his co-defendant, Laura Cook, and a third woman, Morgan." ECF No. 163 at 7. During the call, a woman—who Banker believes is Cook—states as follows:

> What the -----? That ----- asked you for a ride. You gave her a ride. You didn't know what the ---- was going on. The ---? That's crazy bro. I'm not doing that.

Id.

Banker offers no further argument in support of this claim. He presumably believes that the quoted portion of the phone call would have supported the notion that he merely gave C.O. a ride to the hotel and had no knowledge of the reason for taking her there. Even assuming that trial counsel could have relied on the phone call to make such argument, Banker is unable show that counsel's failure to do so prejudiced Banker's defense.

The government presented ample evidence establishing that Banker arranged for C.O. to have commercial sex with the truck driver at the hotel. The evidence included text messages between Banker and C.O, which demonstrated that Banker proposed the idea and facilitated the meeting. See Trial Tr. 143–47, ECF No. 125. The government also introduced a video from April 1, 2015, which showed Banker inside a Sheetz gas station near the hotel and a cashier checking to see if the money he had given her was real or fake, something a detective testified is normally done for "large bills," such as "hundreds [or] fifties." Trial Tr. 294, ECF No. 126. The text messages corroborated the truck driver's testimony that Banker arranged for him to have sex with prostitutes, including C.O., and the video corroborated the truck driver's testimony that he gave Banker two $100 dollar bills prior to having sex with C.O, which Banker took to Sheetz to get change. Trial Tr. 48-49, 61-67, ECF No. 125. The government also admitted phone records indicating that the truck driver attempted to contact Banker several times between 12:00 p.m. and

12:37 p.m. on April 1, 2015. Id. at 69. The truck driver testified that the purpose of the calls was to get Banker "to come back and get that girl." Id.

In short, while Banker suggests that the jail call would have supported the argument that he was only a driver and not a pimp, there was overwhelming evidence to the contrary. Accordingly, at a minimum, this claim fails under Strickland's prejudice prong. There is simply no reasonable probability that the jury's verdict would have been different if trial counsel had offered the jail call into evidence.

### D. Failure to advise of the right to testify

In his final claim, Banker contends that "[h]e does not believe that his trial counsel properly advised him about his right to testify." ECF No. 163 at 7. It is well established that a defendant in a criminal case has a constitutional right to testify on his own behalf and that the defendant retains the ultimate authority to decide whether or not to do so. United States v. McMeans, 927 F.2d 162, 163 (4th Cir. 2001) (citing Rock v. Arkansas, 483 U.S. 44, 51 (1987); Jones v. Barnes, 463 U.S. 745, 751 (1983)). "To waive the right, all the defendant needs to know is that a right to testify exists." Id.

Here, the record reflects that the court expressly informed Banker of his right to testify. After being told that Banker would not be putting on any evidence, the court advised Banker as follows:

> Mr. Banker, let me address you and tell you that Mr. Claytor indicates to me that you have decided not to present any evidence in defense of the case, including any testimony of your own, and that's fine. That's not unusual. That's your decision. But I tell you that you would have, if you wish to exercise it, the absolute right to be a witness on your own behalf; that you have the opportunity to waive your constitutional guarantee against self-incrimination, be sworn, testify, and tell your side of the story.

9

> That opportunity is available to you. It's up to you to decide whether to testify or not. I think, in making that decision, it's appropriate, indeed, and very desirable that you receive the assistance and input of counsel, but it's ultimately your call.

Tr. 296–97, ECF No. 126. The court then inquired as to whether Banker had considered counsel's advice, thought about it himself, and decided not to testify. Id. at 297. In response, Banker affirmatively stated that he did not want to testify. Id.

Having been advised by the court of his right to testify, Banker's failure to testify constitutes a waiver of that right, and "he can not now approach the court and complain of the result of his decision." McMeans, 927 F.2d at 163. Moreover, Banker provides no detail about the substance of his proposed testimony, much less any basis for the court to conclude that it would have had a reasonably probability of changing the jury's verdict. Because he has not shown that he was prejudiced as a result of trial counsel's advice on this issue, Banker's claim of ineffective assistance fails.

## Conclusion

For the reasons stated, the court concludes that Banker is not entitled to relief under § 2255. Accordingly, his motion will be denied. Additionally, because Banker has failed to make a substantial showing of the denial of a constitutional right, the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to Banker and all counsel of record.

DATED: This \_\_10th\_\_ day of February, 2021.

*/s/ Glen Conrad*
_____
Senior United States District Judge